## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAVETTE A. ALEXANDRE, | : Civil No. 1:24-CV-1785 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

## I.  Introduction

Lavette Alexandre filed an application under Title II of the Social Security Act for disability and disability insurance benefits on September 1, 2022. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Alexandre was not disabled from her alleged onset date of September 29, 2021, through January 25, 2024, the date of the ALJ's decision.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

Alexandre now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    <u>Statement of Facts and of the Case</u>

Lavette Alexandre filed for disability and disability insurance benefits, alleging disability due to herniated discs in her lower back and HIV. (Tr. 48). Alexandre was 50 years old at the time of her alleged onset of disability, had at least a high school education, and had past relevant work as a licensed practical nurse and certified nursing assistant. (Tr. 21).

2

The medical record regarding Alexandre's impairments[2] revealed that Alexandre suffered a back injury at work in October of 2020, prior to her alleged onset date, while she was transferring a patient. (Tr. 290). Around this time, Alexandre treated with a chiropractor and reported symptoms of constant burning, numbness, and pain radiating to her lower extremities. (Tr. 319). In December, she complained to Dr. Glen Bradish, M.D., of pain radiating down her right leg and reported she was seeing a chiropractor. (Tr. 290). A musculoskeletal examination at this visit revealed tenderness over her SI joint but was otherwise unremarkable, as Alexandre exhibited a normal posture and gait, negative straight leg raise, and no sciatic tenderness. (Tr. 291). Alexandre received an MRI, which showed herniated discs. (Tr. 294). She treated with a chiropractor at the Chiropractic Care Center prior to the alleged disability period, during which time it was noted that she experienced flare ups with home activities, but that she was receiving

---

[2] Because Alexandre's appeal focuses on her lower back injury, we will forego discussion of the records concerning her HIV.

some relief from treatment and her pain episodes were less frequent. (Tr. 323-70).

In January of 2021, Alexandre followed up with Dr. Bradish, at which time it was noted that she was going to physical therapy three times per week but had minimal improvement. (Tr. 296). Dr. Bradish referred her to pain management. (Tr. 297). In March, Alexandre presented to Dr. Steven Mazza, M.D., who administered bilateral facet joint medial branch blocks. (Tr. 563). At a follow up one week later, Alexandre reported relief from the procedure but developed pain after prolonged sitting. (Tr. 559). Dr. Mazza scheduled her for a bilateral facet joint radiofrequency ablation. (Tr. 560). Alexandre continued to receive injections from Dr. Mazza prior to the alleged disability period. (Tr. 549, 544, 544). During this time, Alexandre's physical examination revealed tenderness, spasms, and decreased lumbar spine range of motion, as well as an intact gait and coordination, intact sensation, and an ability to ambulate without an assistive device. (Tr. 544).

At a consultation in June of 2021, Alexandre complained of tingling and numbness. (Tr. 618). A physical examination revealed full strength,

normal muscle tone, intact sensation, a steady gait, and an ability to tandem, tiptoe, and heel walk. (Tr. 620). Alexandre underwent a nerve conduction study in July. (Tr. 609). That study revealed no evidence of, but could not completely rule out, cervical or lumbar radiculopathy, neuropathy, myopathy, mononeuropathy, or plexopathy. (Tr. 610).

After the alleged onset date, in December of 2021, Alexandre underwent an independent medical examination with Dr. Allister Williams, M.D. (Tr. 1078-82). She reported her October 2020 work incident and her history of lower back, right groin, and leg pain, which caused her difficulty standing and sitting. (Tr. 1078-80). On examination, Alexandre exhibited an antalgic gait and severe tenderness to palpation, no palpable spasms, 5/5 lower extremity strength, and intact sensation. (Tr. 1080). Dr. Williams opined that the diagnosis of herniated discs was consistent with diagnostic studies, but that his examination showed that Alexandre had "no objective physical exam findings consistent with symptomology that could be associated with a disc herniation[.]" (Tr. 1081). He further opined that Alexandre was

capable of sedentary work with no repetitive bending or twisting and with a sit/stand option. (*Id.*).

Alexandre treated with Dr. Mazza in February of 2022, at which time she presented with a steady gait and received an epidural steroid injection. (Tr. 527). Her physical examination revealed tenderness, spasms, and decreased range of motion in her lumbar spine, as well as an intact gait, normal reflexes, and intact motor function and sensation. (Tr. 527-28). In April, Alexandre reported increased lower back tightness made worse by prolonged driving. (Tr. 514). She stopped seeing her chiropractor because of the long drive. (*Id.*). Dr. Mazza noted she was stable on her medication routine but requested prednisone for her increased pain. (*Id.*). Alexandre's physical examination was similar to her previous visit, showing tenderness, spasms, and decreased range of motion. (*Id.*). Dr. Mazza suggested she continue her home exercise program, with which she was making slow progress. (Tr. 514-15).

In October of 2022, Alexandre reported some improvement to Dr. Mazza, noting that she still had significant pain but felt that her exercises and stretching were helping, and she was slowly increasing her

6

activities. (Tr. 666). A physical examination revealed similar findings of tenderness, spasms, and decreased range of motion, as well as intact motor function and normal coordination. (Tr. 667). Dr. Mazza noted Alexandre was stable with her home exercise program. (*Id.*). Alexandre followed up in November, complaining of a flare up and increased pain in her left leg, and she was referred to physical therapy. (Tr. 694-96). However, after only three visits, Alexandre discontinued physical therapy treatment in December. (Tr. 741).

Treatment notes from April of 2023 indicate that Alexandre transferred care to a new physician after Dr. Mazza retired, and she reported frequent flareups of her lower back pain. (Tr. 949). She reported significant improvement since an epidural steroid injection in February of 2022, but that during her recent flareups, she used a cane and had difficulty sitting and standing for more than 20 to 30 minutes at a time. (Tr. 957). A physical examination revealed tenderness, spasms, and decreased range of motion in her lumbar spine, an intact gait, and intact coordination and motor function. (Tr. 951-52). Alexandre's

physical examination was similar at a September 2023 visit, at which time she was scheduled for an epidural steroid injection. (Tr. 1035).

It is against the backdrop of this record that an ALJ held a hearing on Alexandre's disability application on December 5, 2023. (Tr. 27-46). Alexandre and a Vocational Expert both appeared and testified at this hearing. (*Id.*). Following this hearing, on January 25, 2024, the ALJ issued a decision denying Alexandre's application for disability benefits. (Tr. 11-26). The ALJ first concluded that Alexandre had not engaged in substantial gainful activity since her alleged onset date of September 29, 2021. (Tr. 16). At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Alexandre's degenerative disc disease/spondylosis of the lumbar spine was a severe impairment. (*Id.*). At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 17). Specifically, the ALJ considered Listing 1.15 regarding disorders of the skeletal spine and concluded that the medical evidence did not establish the medical findings necessary to meet this listing. (*Id.*).

Between Steps 3 and 4, the ALJ then concluded that Alexandre:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following limitations. The claimant is limited to occasional balance stoop, crouch, crawl, kneel, climb ramps and stairs, but never ladders ropes or scaffolds. The claimant is limited to frequent exposure to temperature extremes of cold and heat humidity and vibrations.

(Tr. 17).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Alexandre's reported symptoms. With respect to the medical opinion evidence, the ALJ considered the opinions of the state agency consultants, Dr. Tedesco and Dr. Warner, and found these opinions generally persuasive. (Tr. 19-20). Dr. Tedesco opined in December of 2022 that Alexandre could perform light work with occasional postural limitations. (Tr. 51-53). On reconsideration in March of 2023, Dr. Warner similarly opined that Alexandre was limited to a range of light work. (Tr. 60-62). The ALJ reasoned that these opinions were supported by and consistent with objective medical evidence and Alexandre's activities of daily living. (Tr. 19-20). Specifically, the ALJ noted that

while Alexandre had a history of lower back pain, she treated effectively and controlled her symptoms as shown by examination findings of normal sensation, coordination, and gait, and her ability to perform household chores, drive, and shop in stores. (*Id.*). The ALJ also noted that she accounted for more restrictive non-exertional limitations, such as exposure to temperature extremes and vibration, based on Alexandre's testimony. (Tr. 20).

The ALJ also considered Dr. Williams' December 2021 opinion but found it unpersuasive. (Tr. 20). The ALJ first discounted Dr. Williams' statement that Alexandre was capable of gainful employment as an issue explicitly reserved for the Commissioner. (*Id.*). Additionally, the ALJ found that Dr. Williams' opinion that Alexandre should be limited to sedentary work was not consistent with his own examination findings, other medical evidence in the record, or the state agency consultants' opinions. (*Id.*).

With respect to Alexandre's symptoms, the ALJ found that Alexandre's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the

10

medical evidence. (Tr. 18). Alexandre testified that she could not work after her work incident in October 2020 after lifting a patient. (Tr. 33). She stated that she had difficulty standing and sitting for long periods of time, as well as difficulty doing things around the house. (Tr. 34-35). She testified that she could perform household chores, such as dishes, vacuuming, and laundry, but that she needed to sit and take breaks. (*Id.*).

The ALJ ultimately found Alexandre's testimony to be inconsistent with the objective clinical findings. (Tr. 18). The ALJ reviewed the medical evidence of record, including the abnormal findings of tenderness, muscle spasms, and decreased range of motion throughout the relevant period. (Tr. 18-19). The ALJ also recounted the examination findings of 5/5 strength, normal reflexes, intact sensation, and normal gait. (*Id.*). The ALJ further noted that Alexandre treated with chiropractic care, physical therapy, and injections, and that by October of 2022, Alexandre reported increasing her household activities. (*Id.*). The ALJ also noted that Alexandre chose to discontinue physical therapy in December of 2022 after just three visits. (Tr. 19). Further, the ALJ

recounted Alexandre's activities of daily living, finding that while she had some limitations performing those activities, her ability to perform household tasks, prepare meals, drive, and shop, among other activities, suggested she was not as limited as she alleged. (*Id.*).

Having made these findings, the ALJ found at Step 4 that Alexandre was unable to perform her past work but found at Step 5 that she could perform the occupations of general office helper, collator operator, and routing clerk. (Tr. 21-22). Accordingly, the ALJ found that Alexandre had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 22).

This appeal followed. On appeal, Alexandre argues that the ALJ erred in finding that Alexandre did not meet a listing, and in her consideration of the medical opinion evidence and Alexandre's testimony. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).   Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).   However, where there has been an adequately developed

13

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*,

No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but

rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.** **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments,

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

19

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113

### C. Standards Governing Step 3 of the Sequential Analysis

At Step 3 of this sequential analysis, the ALJ is required to determine whether a claimant's impairments or combination of impairments are so severe that they are *per se* disabling, entitling the claimant to benefits. As part of this analysis, the ALJ must determine whether a claimant's alleged impairment is equivalent to one or more listed impairments, commonly referred to as listings, that are acknowledged to be so severe as to preclude the claimant from working. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; *Burnett*, 220 F.3d 112, 119.

Thus, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered *per se* disabled and is awarded benefits. 20 C.F.R. §416.920(d); *Burnett*, 220 F.3d at 119. The claimant bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91). An impairment that meets or equals only some of the criteria for a listed impairment will not be sufficient. *Id.*

This Step 3 determination is a medical determination. Accordingly, the claimant must present medical evidence or a medical opinion showing that his or her impairment meets or equals a listing. However, the ALJ is not required to accept a physician's opinion if the opinion is not supported by objective medical evidence. *See Schwartz v. Halter*, 134 F. Supp. 2d 640, 659 (E.D. Pa. 2001). The ALJ is responsible for identifying the relevant listed impairments, given that it is it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Burnett*, 220 F.3d at 120 n.2.

### D. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in September of 2022 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§

22

404.1520c(c)(1), 416.920c(c)(1).  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066.  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.  *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).  On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a

23

medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### E. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources

and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

**F. The ALJ's Decision is Supported by Substantial Evidence.**

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the

26

ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Alexandre first argues that the ALJ erred in finding that she did not meet Listing 1.15. This listing encompasses musculoskeletal disorders resulting in compromise of a nerve root. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.15. In order to meet or medically equal this listing, a claimant must provide evidence of all of the following:

> A. Neuro-anatomic (radicular) distribution of one or more of the following symptoms consistent with compromise of the affected nerve root(s)[;] AND
> B. Radicular distribution of neurological signs present during physical examination (see 1.00C2) or on a diagnostic test (see 1.00C3) and evidenced by 1, 2, and either 3 or 4[;] AND
> C. Findings on imaging (see 1.00C3) consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine[;] AND
> D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of at least one of the following:
>
> > 1. A documented medical need (see 1.00C6a) for a walker, bilateral canes, or bilateral crutches (see

1.00C6d) or a wheeled and seated mobility device involving the use of both hands (see 1.00C6e(i)); or

2. An inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4), and a documented medical need (see 1.00C6a) for a one-handed, hand-held assistive device (see 1.00C6d) that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand (see 1.00C6e(ii)); or

3. An inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements (see 1.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.15.

In support of this assertion, the plaintiff points to Exhibits 11F and 16F in the administrative record, arguing that Alexandre's impairments meet this listing. But neither of these exhibits, nor any other evidence in the record, establishes the medical findings necessary to meet Listing 1.15. For example, there is no evidence in the record of imaging containing findings of a compromised nerve root as required by subpart (C). Nor is there any evidence of a documented medical need for an assistive device or limited use of the plaintiff's upper extremities set forth in subpart (D). Accordingly, the plaintiff's listing argument is wholly without merit and does not require a remand, as there is no evidence in

the record establishing that the plaintiff meets all of the listing's requirements.

Next, the plaintiff appears to challenge the ALJ's consideration of the medical opinion evidence, as well as her consideration of the plaintiff's subjective symptoms. At the outset, we note that the plaintiff devotes a substantial portion of her brief discussing the ALJ's treatment of a treating source opinion. But this argument ignores two facts—first, the only medical opinions of record are that of the state agency consulting physicians and the one-time independent medical examiner, Dr. Williams; and second, this application was filed after the Social Security regulations were amended to no longer require an ALJ to give hierarchical treatment to medical opinions, and instead, require the ALJ to consider the persuasiveness of each opinion. Thus, the plaintiff's argument regarding treating source opinions is misplaced.

More fundamentally, we find that the ALJ's treatment of the medical opinions is supported by substantial evidence. The ALJ in this case was faced with three medical opinions, two of which opined Alexandre was limited to a range of light work, and one that limited her

to sedentary work.  The ALJ reasoned that the state agency opinions limiting Alexandre to light work were consistent with and supported by the objective medical evidence and Alexandre's activities of daily living. The ALJ found Dr. Williams' opinion unpersuasive, reasoning that the opinion was not supported by Dr. Williams' own examination findings, nor was it consistent with the objective medical evidence or the other medical opinions of record.  Ultimately, the ALJ was confronted with several medical opinions that set forth varying restrictions regarding Alexandre's ability to perform work.  The ALJ adequately explained why she found the state agency opinions persuasive and Dr. Williams' opinion not persuasive, citing Alexandre's treatment records to support the limitations set forth in the RFC.  Accordingly, we conclude that the ALJ's treatment of the medical opinions is supported by substantial evidence.

We reach a similar conclusion with respect to the ALJ's consideration of Alexandre's subjective symptoms.  While the plaintiff contends that her testimony should have been deemed credible, the ALJ sufficiently explained why she found Alexandre's testimony to be inconsistent with the objective medical evidence.  The ALJ acknowledged

the abnormal findings in the record, such as tenderness, spasms, and decreased range of motion, which she found supported Alexandre's history of back pain symptoms and a limitation to light work. However, the ALJ also considered the unremarkable findings during the relevant period, Alexandre's activities of daily living, and the evidence that showed Alexandre was treating her symptoms effectively. Ultimately, the ALJ concluded that Alexandre's physical impairment did not render her as limited as she alleged. Alexandre does not point to any specific evidence which, if deemed credible by the ALJ, would support a finding that she would be unable to work within the parameters of the RFC. Thus, while Alexandre challenges the ALJ's credibility determination, we are not permitted at this stage to reweigh the evidence, *Chandler*, 667 F.3d at 359, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence." *Biestek*, 139 S. Ct. at 1154. Here, we conclude that the ALJ's consideration of Alexandre's subjective symptoms is supported by substantial evidence.

Given that the ALJ considered all the evidence and adequately explained the decision to include or discount certain limitations as

31

established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV.  <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 21st  day of July 2025.


<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge